[No. 19614.  Department Two.  February 1, 1926.]

MOLLIE B. FARLEY, *Respondent*, v. FIDELITY RENT &
COLLECTION COMPANY, *Appellant*.[1]

[1] TRIAL (118½)—CUSTODY AND DELIBERATIONS OF JURY—TAKING
PAPERS TO JURY ROOM—NOTATIONS ON INSTRUCTIONS.  Though not
commended as good practice, it is not prejudicial error for the
court to send the written instructions to the jury room without
eradicating the notations of authorities intended for the benefit
of the trial court.

[2] TRIAL (89)—INSTRUCTIONS—INCONSISTENT OR CONTRADICTORY IN-
STRUCTIONS.  Error cannot be assigned on a contradictory and
erroneous statement of law, where, from more elaborate state-
ments immediately preceding and following, it could have had
no prejudicial effect.

[3] TRIAL (93)—INSTRUCTIONS—APPLICATION TO PLEADINGS AND CASE.
Where throughout the trial the term "general agency" had been
used as expressive of a certain situation, it is not prejudicially
erroneous to use the same expression in the instructions, where
the jury must have understood to what the phrase referred.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered March 9, 1925, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action for money had and received.  Affirmed.

*Anthony M. Arntson,* for appellant.
*Ellis, Fletcher & Evans,* for respondent.

MACKINTOSH, J.—The complaint charges that the ap-
pellant was acting as the respondent's agent in caring
for certain properties, collection of rents therefrom
and making disbursements in relation thereto, and that
there was due and owing to the respondent, on account
of rent and moneys collected as her agent, over and
above the commission to which the appellant was en-
titled, the sum of $258.88, that demand had been made
for that amount, but that the appellant had neglected

[1]Reported in 242 Pac. 1097.

and refused to pay it, and concluded with a prayer for judgment in that amount.

The appellant's answer admitted that it was acting as agent for the respondent, and denied that a balance was due the respondent; and, as an affirmative defense and counterclaim, alleged that there was a balance due the appellant in the sum of $156.12, arising from the fact that the respondent had authorized and employed the appellant to secure a tenant for certain premises described; that the appellant had secured a tenant under a three-year lease, that the tenant was accepted by respondent and the lease entered into, and that, at the usual and customary rate, the commission earned for securing such a tenant, and unpaid, would amount to $415; that demand had been made for the payment of this commission, which had been refused. Respondent replied to the affirmative matter, denying that there had ever been any contract or agreement in regard to the lease.

On these pleadings, the case went to trial before a jury, which returned a verdict in favor of the respondent for the sum of $258.88. The appellant claims that the evidence was insufficient to justify the verdict, and that the verdict was against the law.

Without reciting the evidence presented by the parties showing the transactions between them, it will suffice to say, that there was enough evidence, presented on behalf of the respondent, to sustain the jury's finding that the appellant was entitled to no commission for having secured a lessee of a portion of respondent's property.

[1] Another allegation of error is that, in submitting the written instructions to the jury, the court neglected to remove therefrom notations of legal authorities appearing at the end thereof. This notation of authorities at the bottom of instructions does not con-

stitute reversible error.   They were evidently placed·
there for the benefit of the trial court, and it was by
oversight that the court neglected to eradicate them
before sending the instructions to the jury.   This was
not good practice, but was not an error which is suffi-
ciently prejudicial to justify a new trial.   *Herzog v.
Campbell,* 47 Neb. 370, 66 N. W. 424; *State v. Sage,* 22
Idaho 489, 126 Pac. 403, Ann. Cas. 1914B 251.

[2]   Another error assigned is in one of the instruc-
tions, in which the court was detailing to the jury the
manner in which the respondent might be bound to pay
a commission, charging that the commission could only
be collected if there had been a contract or agreement
to pay for the services rendered, and that an agreement
could arise from an express understanding between the
parties, or could be established by circumstances which
would show a mutual intention to contract in regard
to commission.   The court then said: "If the evidence
fails to show a meeting of the minds of the parties on
the terms of this claimed contract, then no contract
would exist, and defendant's counterclaim should be
disallowed."   Standing by·itself, this sentence is con-
tradictory to the language preceding it in the instruc-
tion, and is an erroneous statement of the law.   How-
ever, as we view it, it could not be prejudicial, in view
of both what preceded it and what immediately followed
it.   After making this statement, the court went on to
elaborate upon the liability of the respondent, if the
jury should find from the evidence that the appellant
rendered services at her request, although nothing was
said as to compensation for such services.   The instruc-
tions, taken as a whole, clearly defined to the jury the
circumstances under which the respondent would be
liable, and negative the possibility of the erroneous
statement having had any prejudicial effect.

[3]    Another instruction is objected to, for the reason that it contains a statement in regard to general agency, the court saying that, whether the respondent was liable for a commission, in the absence of an express agreement, depends upon the relations between the parties and the circumstances surrounding the transaction, and that if the jury found from the evidence that

". . . the defendant was the general agent of the plaintiff in looking after her properties, procuring tenants, collecting rentals for a charge of five per cent commission on moneys and rentals collected by defendant for her, and that, in regard to procuring a tenant and a term lease for this A Street property, there was no new or independent express agreement or understanding between them, and that the circumstances were not such as to show a new contract or agreement regarding this matter, independent of or in addition to defendant's duties and obligations under its general agency, but that in the matter of procuring a tenant for this property the plaintiff actually believed, and her dealings with defendant and the circumstances surrounding this transaction justified her in believing, that no new arrangement was entered into or intended, but that this service was being performed by the defendant under its general agency, and that no charge or commission other than the charge of five per cent on moneys and rentals collected and to be collected by defendant was to be made, or was contemplated, then you should disallow this claim."

The objection to this instruction is, that it is based upon the theory of the existence of a general agency, whereas the evidence shows that the appellant did not have control of all of the respondent's property. It may be true that the term used was not the exact one which expressed the relationship between the two parties to this litigation, but it was used in a broad sense, as referring to an agent who had all the powers and

duties which the testimony showed the appellant pos-
sessed.  Throughout the testimony of the officers and
employees of the appellant, the phrases "general
agents" and "general agency" were frequently used,
as expressive of the situation, and the jury, in the light
of this evidence, must have understood the instruction
as referring to what the witnesses had testified to; and
as typical of this testimony the following extract from
the testimony of the secretary of the appellant may be
quoted:

"Q. In other words, if she had left the property in
your hands this charge would never have been thought
of?  A. If she had left the property in our hands this
charge would have been greater than it is now.  Q. This
property would have gone in under the general agency
agreement?  A. Yes, sir, it would have gone in under
the general agency agreement."

When an expression, possibly not adequately accur-
ate, has been used throughout the trial as expressive of
a certain situation, an instruction adopting that same
expression cannot be held to be prejudicially erroneous.
The court, counsel, parties and the jury must of neces-
sity have understood to what the phrase referred.

There being no error, the judgment is affirmed.

TOLMAN, C. J., MAIN, MITCHELL, and PARKER, JJ.,
concur.