SAMUEL McCLENEGHAN v. JOHN REID.

[FILED APRIL 13, 1892.].

1. **Review: SLANDER: MONEY PAID UNDER DURESS.** In an action for slander and to recover money paid under duress, a part of the same transaction, issues were joined and a trial had which resulted in a verdict of $500 for the plaintiff. There being a conflict in the testimony, the court will not disturb the verdict.

2. **Trial: ORDER OF PROOF.** On the trial the plaintiff introduced testimony in support of his cause of action; the defendant thereupon introduced evidence to sustain his answer; the plaintiff then introduced evidence to rebut the evidence introduced by the defendant and to show that the cattle in controversy in fact belonged to him, and were not branded as claimed by the defendant. *Held*, No error.

3. ——: ——. The order in which proof is introduced is, to a great extent, in the discretion of the trial court, and unless a party has been deprived of a substantial right or there is an abuse of discretion the action of such court will not be reversed.

4. **Slander: EVIDENCE.** In an action for slander, proof that the defendant repeated the words alleged to be slanderous at other times before the bringing of the action than those set forth in the petition may be introduced for the purpose of showing malice.

5. **Review.** There is no material error in the instructions.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*E. F. Gray*, for plaintiff in error, cited: *Eckhart v. Wilson*, 10 S. & R. [Pa.], 52; *Geary v. Bennett*, 27 N.

W. Rep. [Wis.], 336; *Frazier v. McClosky*, 60 N. Y., 338; *Boldt v. Budwig*, 19 Neb., 744, 745; *Rosewater v. Hoffman*, 24 Neb., 230, and cases.

*Cowin & McHugh*, contra, cited: *Tootle v. Jones*, 19 Neb., 558; Townshend, Slander & Libel [4th Ed.], secs. 392, 394; *Gribble v. P. P. Co.*, 25 N. W. Rep. [Minn.], 710; *Beneway v. Thorp*, 43 N. W. Rep. [Mich.], 863; Newell, Defamation, Slander & Libel, sec. 35; *Reitan v. Goebel*, 22 N. W. Rep. [Minn.], 291; *Wabash Pr. & Pub. Co. v. Crumrine*, 21 N. E. Rep. [Ind.] 904; *Craker v. R. Co.*, 36 Wis., 657; *Cooper v. R. Co.*, 66 Mich., 261.

MAXWELL, CH. J.

This is an action in two counts. The first to recover the sum of $102.27 paid under alleged duress, and the second, as a part of the same transaction, for slander in calling the defendant in error a thief.

The defendant below in his answer alleges:

"First—For answer to the first cause of action in the plaintiff's petition herein the defendent states: That the plaintiff at the time mentioned in said first cause of action did ship a bunch of cattle to South Omaha cattle market and there did sell the same; that five of the cattle so shipped and sold, then were the property of the defendant, and the defendant did wire to prevent the sale of his said cattle, and did proceed to South Omaha immediately and identify and claim his said five cattle and then did sell them for $102.27 to Hom & Sharp, commission men, who had made sale of said bunch of cattle for the plaintiff. The defendant denies that he claimed he would have defendant arrested and sent to jail; denies that he claimed he would make complaint for that purpose; denies that he would then and there have had the plaintiff arrested and sent to jail; denies that the plaintiff permitted the vendee of said stock to pay the defendant under threats and duress; denies that

the defendant's claim was made to extort money from the plaintiff; and the defendant denies each and every allegation in said first cause of action contained which is not expressly admitted above.

"Second—For answer to the second cause of action in said petition the defendant denies each and every allegation in said second cause of action contained.

"Third—For a second defense and answer to said second cause of action the defendant states that the plaintiff, in Douglas county and state of Nebraska, on the 1st day of August, A. D. 1888, and at and before the time of the supposed speaking of the supposed defamatory words mentioned in said second cause of action, feloniously did steal, take, and carry away, and sell at the stock yards in South Omaha, one cow, one yearling heifer, and three steers, of the value of $102.27, the property of the defendant, and the said cattle being the same five head of cattle mentioned in said second cause of action as claimed by the defendant; and the said stealing being the same stealing which is alleged in said second cause of action to have been by the defendant charged against the plaintiff, and in reference to which stealing it is in said second cause of action alleged that the defendant did speak and publish of and concerning the plaintiff the words, viz., 'you,' speaking of this plaintiff, and meaning this plaintiff, 'are a damned thief, you stole these cattle and you know it,' and 'I will have you arrested for a thief before you leave this ground, for you stole those cattle,' meaning said five head, 'and I will send you right to the penitentiary'; and that said supposed defamatory words, in reference to said five head of cattle, alleged in said second cause of action to have been spoken and published by the defendant of and concerning the plaintiff, are true.

"Fourth—For a third defense and answer to said second cause of action the defendant states that the plaintiff, in Douglas county, Nebraska, on the 1st day of August, 1888,

and at and before the time of the supposed speaking of the supposed defamatory words mentioned in said second cause of action, did ship from Valley to South Omaha stock yards, and there sell, one cow, one yearling heifer, and three steers, of the value of $102.27, the property of the defendant, the said cattle being the same five cattle mentioned in said second cause of action as claimed by defendant, and as just sold at the stock yards at South Omaha, and in reference to which cattle, and sale thereof, it is alleged in said second cause of action that the defendant did speak and publish of and concerning the plaintiff the words therein set out as spoken and published by him; that said five cattle had long been owned by defendant and in his possession, kept by him with his herd of cattle in his fenced pasture near Valley aforesaid, and that said cow and two of said steers were plainly branded with defendant's well known brand of 'M,' and that the other of said steers was plainly branded '—,' of which brand it was well known that the defendant owned a number of cattle, and said yearling heifer was not branded, but was the calf of said cow and run with her; that on the day before said 1st day of August, 1888, the defendant found that said five cattle were no longer with his herd in his said pasture, and that in one place his said pasture fence was torn down and a portion of his cattle had gone out thereat, and thereupon he caused to be made search for them, in prosecuting which the defendant's son and servant, late in the evening of the day before said 1st day of August, 1888, found and identified said five cattle in the plaintiff's small enclosure, near Valley aforesaid, with a bunch of plaintiff's cattle therein selected by him to be shipped and sold, and immediately, on the same evening, notified the plaintiff of said cattle of the defendant being in plaintiff's said small enclosure with his bunch of cattle for shipment, and not to ship them, and informed the defendant thereof that night, and that early in the morning

of said 1st day of August, 1888, the defendant's sons and servants found and identified said five cattle then loaded into cars with said bunch of plaintiff's cattle and in plaintiff's possession just at the instant said cars were started on the run to South Omaha stock yards, and immediately thereafter informed the defendant thereof; that immediately thereafter, on the morning of said 1st day of August, 1888, the defendant, with full knowledge of all the foregoing facts, went to South Omaha stock yards, and there found and identified his said five cattle, that morning shipped from Valley aforesaid with a bunch of plaintiff's cattle, and found that the plaintiff had just sold said five head as his own property, and that what words and all the words spoken as published by the defendant at the time and place alleged in said second cause of action, or at any time or place, in reference to the five cattle mentioned in said second cause of action, or in reference to any matter stated in said second cause of action, were spoken and published in reference to the said five cattle, the said shipment and sale thereof and matter connected therewith above stated, and in the full belief that such words so spoken and published were true and without any malice or intention to injure the plaintiff."

On the trial of the cause the jury returned a verdict in favor of Reid for the sum of $500, upon which judgment was rendered. On the trial of the cause Reid and his witnesses testified in effect that he was the owner of the cattle in dispute; that McCleneghan on August 1, 1888, followed him to the South Omaha stock yards and claimed the cattle in controversy, and said to Reid, in the presence of several persons, "You are a damned thief," and "you stole those cattle and you know it, and I will have you arrested before you leave the ground and put in the penitentiary"; that he then, to avoid arrest and at the urgent solicitation of his wife, paid McCleneghan $102.27 for said cattle. Reid also introduced testimony tending to show that Mc-

Cleneghan, at Valley, afterwards repeated the words charged to be slanderous. McCleneghan then introduced proof tending to show that during the night of July 30 and 31, 1888, his corral had been opened and his pasture fence taken down, and the wires weighted down on the ground, a large number of cattle driven out and back again, and five of his cattle missing; that his missing cattle were, on the evening of July 31, 1888, found by McCleneghan's son, Joe, in Reid's small pasture with Reid's cattle gathered up there for shipment; that on the same evening Joe McCleneghan, the son, notified Reid of the fact and asked him to return the five cattle; that the next morning, August 1, 1888, Reid shipped these five cattle, with his own, to South Omaha stock yards and sold them; that McCleneghan and his son Joe followed Reid to South Omaha stock yards and there picked from two different pens of cattle the five cattle in question, and was about to reclaim them by replevin, when Reid paid McCleneghan his price for the cattle and $10 for his expense in coming after them; that McCleneghan did not utter the words or make the threats charged against him; that the cow and two native steers of the five were branded "M"—the yearling was not branded but was the calf of that cow—and the three-year-old western steer was branded with an S bar A, and that this western steer had been bought by McCleneghan a year or two before with a bunch of western cattle with that brand; that the brand "M" was McCleneghan's own brand; that the five cattle were McCleneghan's; that Reid had the reputation of being a thief. In rebuttal plaintiff below went into his whole case again at great length, and among other things, gave testimony to the effect that none of the five cattle were branded except the cow, and as to this cow he claimed that McCleneghan surreptitiously branded that cow when a calf, and introduced evidence to rebut the testimony against his character.

It would subserve no good purpose to review the evi-

dence at length. It is sufficient to say that it was conflict-
ing and proper for the consideration of a jury, and the
verdict seems to be supported by the weight of evidence.
The order in which proof is introduced is largely within
the discretion of the trial court, and, unless a party has
thereby been deprived of a substantial right or there has
been an abuse of discretion, it is not subject to review.
The course pursued, however, seems to have been the
proper one, and is no ground of error.

It is alleged that certain testimony given by a witness
named Collins was inadmissible under the pleadings. He
testified that on August 2, 1888, McCleneghan said to him,
" He (Reid) is a God-damned thief and he would make it
so hot for him that he would have to leave the country."
In actions of this kind the degree of malice is to be consid-
ered by the jury in fixing the amount of damages. There-
fore the Code permits the defendant to allege the truth of
the matter charged as defamatory and prove the same. He
may also prove any mitigating circumstances to reduce the
amount of damages. The defendant below pleads want of
malice and in effect justifies. To show malice the plaintiff
introduced proof tending to show the falsity of the charge
and that the defendant below had, at other times than those
charged in the petition, uttered the words claimed to be
slanderous. Such proof is admissible to show the *quo
animo*. An instruction may be given, if requested, limit-
ing the proof to that purpose. There was no error there-
fore in admitting it.

Objections are made to certain instructions, but as no
particular error has been pointed out in them it is unneces-
sary to review them at length. There is no error in the
record and the judgment is

AFFIRMED.

THE other judges concur.