JOHN HUTCHENS, APPELLEE, v. JOHN A. KUKER, APPELLANT.

96 N. W. 2d 228

Filed April 24, 1959. No. 34519.

*Robert Saxton,* for appellant.

*Wear, Boland, Mullin & Walsh* and *A. Lee Bloomingdale,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action to recover damages for slander.

Plaintiff alleged that he was an employee of defendant; that he voluntarily terminated the employment; and that thereafter the defendant maliciously and willfully published false and defamatory statements of the plaintiff that he, plaintiff, while employed by defendant, "got away with," "stole," "falsified the books and accounts," and "took" sums of money stated to be $15,000 to $20,000. Defendant's answer was a general denial.

Trial was had to the court, a jury having been waived. The court found generally for the plaintiff and rendered a judgment for the plaintiff against the defendant for the sum of $3,000.

A motion for a new trial was filed and overruled. Defendant appeals.

Defendant here makes four assignments of error. The first three in varying ways present the contention that the court erred in awarding more than nominal damages. The fourth assignment is that the court erred in the admission, over objection, of hearsay testimony, and in failing to sustain motions to dismiss made at the close of plaintiff's evidence and at the close of all evidence.

As to the first part of the fourth assignment, the rule is: In order that assignments of error as to the admission or rejection of evidence may be considered, the holdings of this court require that appropriate reference be made to the specific evidence against which ob-

jection is urged. Pulliam v. State, 167 Neb. 614, 94 N. W. 2d 51.

Defendant does not comply with this rule and hence we put aside the contention as to error in the admission of evidence.

As to the second phase of the assignment, defendant in his brief here states: "The trial court under evaluation of the evidence in the pending case could have awarded nominal damages on the grounds the slander alleged was actionable per se and damages presumed. But actual damages must have been proved to allow more than nominal damages."

The applicable rules are: Any language, the nature and meaning of which are to impute to a person the commission of a crime or to subject him to public ridicule, ignominy, or disgrace, is libelous per se. Tennyson v. Werthman, 167 Neb. 208, 92 N. W. 2d 559.

One who is liable for a libel or for a slander actionable per se is liable for at least nominal damages. Rimmer v. Chadron Printing Co., 156 Neb. 533, 56 N. W. 2d 806.

Under these circumstances it is obvious that the court did not err in denying the motions to dismiss.

There remain in the appeal, then, the questions: (1) Was plaintiff entitled to recover compensatory damages? (2) Were the award and judgment for $3,000 excessive?

We determine these two questions adversely to the defendant and affirm the judgment of the trial court.

The cause having been tried to the court, a jury being waived, the applicable rule is: In an action at law where a jury has been waived it is not within the province of this court to resolve conflicts in or to weigh evidence. If there is a conflict in the evidence this court in reviewing the judgment rendered will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong. Capital Bridge Co. v. County of Saunders, 164 Neb. 304, 83 N. W. 2d 18.

The writer of this opinion unsuccessfully challenged the soundness of the above rule in that case. Nevertheless it is the rule followed by the court, and is to be followed here.

We state the evidence, limiting it to that which goes to the question of damages and, where there is a conflict, stating that which is favorable to the plaintiff as is required by the above rule.

Plaintiff at the time the slander here involved occurred was a man 37 years of age, married, and the father of six children. He is a university graduate and an accountant. Prior to July 1955, he conducted a general accounting business in Omaha and Council Bluffs. He was recommended to and employed by defendant on a part-time basis to do accounting work. In July 1955, he entered defendant's employ to do full-time accounting and general work on a commission basis at defendant's places of business in Fort Calhoun and Nashville, Nebraska. Defendant agreed to give plaintiff a written contract but did not do so. After the first month plaintiff was paid monthly advances on his commissions which were to be calculated later.

In September 1956, plaintiff quit defendant's employ. At that time he took $450 without defendant's knowledge—which plaintiff calculated was about half of his then earned and unpaid commissions. He left a note showing that he had taken $150 in cash, reciting that it was to apply on commissions due. He wrote a check for $300 payable to himself and endorsed on it: "To Apply on Commissions Earned." Later plaintiff sued defendant for these commissions. Defendant paid substantially all plaintiff claimed, and the action was dismissed.

Within hours after plaintiff left defendant's employ, defendant began to publish the slanderous statements about which complaint is made, and they soon became a matter of community knowledge in the 300-population town of Fort Calhoun.

Some of plaintiff's old friends avoided him. Accounting clients that he had formerly served ceased to give him business. Fellow employees where plaintiff's wife worked ceased talking when she came near. Plaintiff became nervous, irritable, and worried, and spent sleepless nights. Antagonistic telephone calls were made to plaintiff at his home about the charges.

A week or two after plaintiff ceased his employment with defendant he was employed by a large industrial firm as an accountant doing budget work. His pay was more than he had been receiving from defendant. Later plaintiff was offered and accepted a promotion to work in Missouri at an increase in salary of $300 a month. The supervising official learned of the charges made by defendant and withdrew the offer of the higher paid position. Plaintiff continued his work with the new employer in his then position, and was so employed at the time of the trial.

What then is the measure of damages?

In Herzog v. Campbell, 47 Neb. 370, 66 N. W. 424, we held: "Words spoken imputing an indictable offense are actionable per se, and no special damage need be proved." We said: "The jury had a right, and it was its duty on proof of the cause of action, to award such damages as in its judgment would fairly compensate the plaintiff for the injury sustained; * * *."

In Bloomfield v. Pinn, 84 Neb. 472, 121 N. W. 716, we held: "It is proper in such a case for the court to instruct the jury that in fixing the amount of damages they may take into consideration the present and future injury to the plaintiff."

In Thomas v. Shea, 90 Neb. 823, 134 N. W. 933, Ann. Cas. 1913B 695, we held: "In determining compensatory damages in such a case, no method of exact computation can be devised, and the amount of recovery must generally be left to the sound discretion of the jury. Having asserted on appeal that the recovery is excessive, it is incumbent on defendant to establish the error."

In Bigley v. National Fidelity & Casualty Co., 94 Neb. 813, 144 N. W. 810, 50 L. R. A. N. S. 1040, we held: "There is no absolute test of damages suffered under such circumstances and it is very difficult to determine the extent of the injury inflicted. * * * It is peculiarly a matter for the jury to determine, and while * * * there is a limit beyond which the jury could not be allowed to go, the court cannot interfere with their verdict in such cases, unless it clearly appears that the verdict was induced by passion or prejudice or some consideration other than the evidence in the case."

In Estelle v. Daily News Publishing Co., 101 Neb. 610, 164 N. W. 558, we held: "The condition and situation in life of one injured by a libel may be shown in evidence, and may be considered by the jury upon the question of the amount of damages."

In Hall v. Vakiner, 124 Neb. 741, 248 N. W. 70, we held: "In an action for slander, the amount of damages recoverable is largely in the discretion of the jury. * * * Unless the amount of a verdict for slander appears to be clearly wrong, or the result of passion or prejudice, or of an abuse of discretion, or of a serious mistake or gross error, or of an extravagant on unconscionable estimate of damages, it will not ordinarily be set aside on appeal as excessive * * *."

The above rules apply to the judgment of a court making a finding of compensatory damages where a jury has been waived.

We see no persuasive reason for disturbing the judgment of the trial court. Its judgment is affirmed.

AFFIRMED.

CHAPPELL, J., concurs in result.